James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068-1739
Telephone: (973) 994-1700

*Attorney for Plaintiff and the Proposed Class*

[Additional Attorneys on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRICE MCMAHON, Individually And On Behalf Of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>    Defendant. | Case No.: _____<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## I.      NATURE OF THIS ACTION

1.      Plaintiff brings this proposed class action for damages and injunctive relief on behalf of herself and all other persons and entities nationwide who purchased or leased a 2019-2023 Volkswagen Atlas and 2020-2023 Volkswagen Atlas Cross Sport vehicles (collectively the "Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Defendant Volkswagen Group of America, Inc. ("Defendant" or "VW").

2.      The defect at issue in this case involves the Vehicles' wiring harnesses, which repeatedly fail and cause many of the Vehicles' features to malfunction and act erratically.  For example, as a result of the defect, the Vehicles' braking systems unexpectedly engage for no reason, windows randomly open and close on their own, and the Vehicles display error messages and emit warning noises. As documented by widespread consumer complaints, these malfunctions have plagued the Vehicles since their launch.

3.      The defect poses a safety risk because when a Vehicle brakes unexpectedly, it poses a danger to not only its driver and passengers but to other traffic. Moreover, unexpected noises can cause the driver to become distracted. The defect can also cause safety-related systems (including airbags) to fail.

4.      Defendant has long known or should have known of the Vehicles' wiring harness problems from multiple sources. These sources include pre-release design, manufacturing, and testing data; warranty claims data; consumer complaints made directly to Defendant, collected by the National Highway Transportation Safety Administration ("NHTSA"), and/or posted on public online forums; testing done in response to those complaints; aggregate data and complaints from authorized dealers; and other sources.  Yet Defendant failed to disclose and actively concealed the Vehicles' wiring harness defect from the public, and continues to manufacture, distribute, and sell the Vehicles without disclosing the defect.

5.      Under the Vehicles' New Vehicle Limited Warranty, VW is required to "repair to correct a defect in manufacturer's material or workmanship (i.e., mechanical defects)…." The Vehicles share substantially identical wiring harnesses and are defective in material or workmanship under normal use.

6.      VW has not found a solution to the wiring harness defect.  When Vehicle owners complain about the defect and seek a repair they are often told parts are unavailable. Vehicle owners often have to wait months for replacement

harnesses. Moreover, VW does not consistently provide loaner vehicles so Vehicle owners are often forced to choose whether to continue driving the dangerously defective vehicles while waiting for replacement parts, or cease using their vehicle for months until replacement parts become available. Worse still, when replacement harnesses finally become available and VW attempts to repair the Vehicles, it simply replaces defective parts with equally defective parts, thereby leaving consumers caught in a cycle of use, malfunction, and replacement.

7.     One known Vehicle lessee's experience with his 2020 Atlas Cross Sport is illustrative. He began experiencing problems with his Vehicle's the wiring harnesses shortly after leasing his vehicle.  The parking brake would engage on its own at stop lights while driving and he would have to manually unlock it before moving forward. Also, an alert/beeping noise would intermittently chime and the Vehicle's windows would randomly go up and down on their own while driving. He took his Vehicle to the dealer for repairs, but it took more than three months to obtain a replacement wiring harness.  During the interim period, the Vehicle lessee had to drive a small rental vehicle that was inadequate for his needs.  But when the Vehicle was finally "repaired" with a new wiring harness, the Vehicle continued to malfunction.  In one instance, the Vehicle lessee started to accelerate from a stop light when the brakes suddenly engaged for no apparent reason. At the time, the lessee was taking a sip from an aluminum water bottle when the sudden braking

caused him to lurch forward, cutting his lip and chipping two teeth on the bottle which became pinned against the steering wheel.

8.      Plaintiff brings this action for violation of relevant state consumer protection acts and for breach of express and implied warranties on behalf of a nationwide class and state classes of Vehicle lessees and owners.  Plaintiff seeks damages and equitable relief on behalf of herself and all others similarly situated.

## II.     JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendant are citizens of different states.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant is a resident of New Jersey.

## III.    PARTIES

11.      Plaintiff McMahon is a Massachusetts citizen residing in Wellesley, Massachusetts.

12.      Plaintiff leased a new Atlas on February 28, 2021 from Wellesley Volkswagen in Wellesley, Massachusetts.

13.     Prior to purchasing the Vehicle, Plaintiff researched it online and was particularly interested in the Vehicle's third row seating because she frequently transports four children in car seats. Vehicle safety was another very important consideration for Plaintiff. Plaintiff ultimately bought the Atlas believing it would be a safe and reliable vehicle.

14.     At no point during her research and conversations with the dealership was Plaintiff informed by Defendant or anyone else about any defects associated with the wiring harnesses. None of the representations received by Plaintiff contained any disclosure relating to any defect in the wiring harnesses.  Had Defendant disclosed that the wiring harnesses in the Vehicle were defective, preventing the full use of the Vehicle and posing safety risks, Plaintiff would not have purchased it, or would have paid less for the Vehicle.

15.     Plaintiff began experiencing problems with the wiring harnesses shortly after leasing her vehicle.  The parking brake would randomly engage while driving and warning messages would sporadically appear.

16.     When Plaintiff took the Vehicle to Wellesley Volkswagen to be repaired, she was told that replacement parts needed to repair the malfunctioning wiring harness were delayed.  Plaintiff's Vehicle remained at Wellesley Volkswagen from approximately November 12, 2021 until the end of February 2022.  During the interim, Plaintiff was provided several loaners that were substantially smaller and

did not fit four car seats as needed by Plaintiff's family.

17.     Plaintiff has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the wiring defect including, but not limited to, overpayment and diminished value of the Vehicle.

18.     Defendant Volkswagen Group of America, Inc. is a New Jersey corporation with a principal place of business in Herndon, Virginia.

19.     At all relevant times, Defendant was engaged in the business of marketing, supplying, and selling motor vehicles accompanied by written warranties to the public at large through a system of authorized dealerships

20.     In this Complaint, when reference is made to any act, deed or conduct of Defendant, the allegation means that Defendant engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant.

21.     Defendant sells cars in part via communications that it authorized its dealers to make about vehicles, including the defective Vehicles discussed herein. This includes authorizing dealers to distribute brochures and other marketing and promotional material.  Defendant, through its authorized dealers, has and had the opportunity to disclose all material facts relating to the defective Vehicles.

22.     Authorized dealers are Defendant's agents, such that an opportunity to

receive information from an authorized dealership is an opportunity to receive information directly from Defendant itself. This agency relationship is established by the fact that, among other things: Defendant's logo is displayed at authorized dealerships; Defendant issues technical bulletins and service instructions to dealerships detailing potential vehicle problems, and also relies on them to push software updates to customers' vehicles; Defendant distributes various adverting and promotional material to its dealerships, including brochures, booklets, and pamphlets; and under the terms of its express warranty, Defendant requires its customers to return to its authorized dealerships to perform warranty repairs. Furthermore, Defendant's relationship with its dealerships is governed by a dealership agreement that imposes a number of reciprocal obligations on both parties.

## IV.   FACTUAL ALLEGATIONS

**A.    The Wiring Harness Defect**

23.    The Vehicles suffer from a dangerous manufacturing defect that causes the Vehicles' door wiring harnesses to fail and the Vehicle's systems to malfunction.

24.    Because the Vehicles' wiring harnesses are responsible for a wide variety of vehicle functions, the defect causes a wide range of problems for the Vehicles. For instance, the Vehicles' airbags may fail to deploy. The defect can also cause the Vehicles' brakes to lock up while the Vehicle is in motion, thereby

posing a danger to the driver and other motorists.  The defect is also known to cause the windows to go up and down on their own, as well as error messages and warning noises. These problems pose a safety risk because when the system malfunctions, unexpected motions and sounds can cause the driver to become distracted.

**B.    Defendant Knew of the Wiring Harness Defect Before Plaintiff Leased her Vehicle**

25.    Defendant has long known or should have known of the Vehicles' wiring harness problems from multiple sources. These sources include pre-release design, manufacturing, and testing data; warranty claims data; consumer complaints made directly to Defendant, collected by NHTSA, and/or posted on public online forums; testing done in response to those complaints; aggregate data and complaints from authorized dealers; and other sources.  Yet, Defendant failed to disclose and actively concealed the Vehicles' wiring harness defect from the public, and continued to manufacture, distribute, and sell the Vehicles. Defendant continues to fail to disclose and actively conceals this defect from consumers prior to purchase or lease.

**1.    Pre-Release Design, Manufacturing, and Testing Data**

26.    It is standard practice for automobile manufacturers to engage in extensive pre-launch testing of its vehicles.  Defendant did so for the defective Vehicles and tested the operation of the wiring harnesses prior to selling the defective Vehicles.  Given the immediacy and frequency of consumer complaints

about the wiring harness defect, it is apparent that Defendant knew about the defect before the defective Vehicles were sold or leased.

27.     During vehicle development, Defendant necessarily would have gained comprehensive and exclusive knowledge about the wiring defect.  Such knowledge would necessarily include: the forces and stresses the systems faces in normal use; the cumulative wear on the system caused by use, age, and environmental factors; and how using different designs affect the performance of the systems.  This design, engineering, and testing data is unavailable to Plaintiff without discovery, but upon information and belief, analysis of this data would have revealed that the wiring harnesses were insufficient for their intended use and would malfunction frequently.

**2.     Warranty Claims Data**

28.     Defendant also knew or should have known about the wiring harness defect based on the large number of warranty repairs made immediately upon the Vehicles' launch.

29.     Upon information and belief, Defendant regularly compiles and analyzes detailed warranty service information regarding repairs performed under warranty at its network of dealerships.  Indeed, Defendant requires dealers to maintain detailed and meticulous records for any warranty repairs performed and routinely refuses to pay for warranty repairs made where the nature and cause of the malfunction is insufficiently described.

10

30.     Upon information and belief, these dealer service records and warranty data reflect an abnormally large spike in wiring harness failures immediately following the launch of the Vehicles.

31.     As documented by widespread consumer complaints, this defect has plagued the Vehicles since their launch.   Consumers began posting furious complaints on the internet shortly after the Vehicles first went on sale:

- NHTSA Complaint No. 11246080, June 19, 2019 (2019 Atlas): **THE CAR IS 6 MONTHS OLD. WE HAVE 5 DOCUMENTED CASES OF THE VEHICLE STOPPING/BRAKING ON IT'S OWN FOR NO REASON.** THE DEALER AND VW CORPORATE DO NOT HAVE A FIX AND SUGGESTED WE KEEP DRIVING IT TO GET MORE DOCUMENTED OCCURRENCES. THE VEHICLE POSES AN EXTREME SAFETY RISK AT THIS TIME DUE TO FAULTY BRAKING ASSIST MECHANISMS. 2 OF THE 5 OCCURRENCES INVOLVED IT THROWING THE PARKING BRAKE ON BY ITSELF AND THE OTHER 3 WERE DRASTIC SLOW DOWNS WITH NOTHING AROUND. ALL INCIDENTS REPORTS ARE ATTACHED AND ARE EXACTLY WHAT WAS TURNED INTO THE DEALER AND VW CORPORATE

- NHTSA Complaint No. 11235116, July 26, 2019 (2019 Atlas): THE REAR WINDOW VEHICLE HAS A FAULTY FRONT FACING CAMERA THAT HAS OR HAD A DATA ISSUE THAT CAUSES THE VEHICLE TO IMMEDIATELY STOP WITHOUT WARNING AND THE PARKING BRAKE TO ENGAGE. I TOOK THE VEHICLE TO TOM WOOD VOLKSWAGEN WHERE THEY CONFIRMED THE ISSUE, AND SAID IT HAD HAPPENED SOME PLACE ELSE AS WELL. THIS WILL EASILY CAUSE REAR IMPACT CRASHES BECAUSE THE VEHICLE ABRUPTLY STOPS IN THE MIDDLE OF THE ROAD WITHOUT WARNING.

- NHTSA Complaint No. 11253281, September 4, 2019 (2019 Atlas): EMERGENCY BRAKE ACTIVATED WHEN THE VEHICLE WAS IN MOTION AND TURNING TOWARDS AN OPEN PARKING SPACE. NOTHING WAS IN FRONT OF THE VEHICLE AT THE TIME OF THE EMERGENCY BRAKE DEPLOYING. THIS LEFT THE VEHICLE STUCK IN THE MIDDLE OF PARKING LANE AND COULD HAVE BEEN HIT BY CROSS TRAFFIC.

- NHTSA Complaint No. 11361207, September 24, 2019 (2019 Atlas): MULTIPLE TIMES THE SUV WILL AUTOMATICALLY BREAK WITH THE PARKING BREAK. IT HAS HAPPENED WILL TRYING TO TAKE OFF FROM A LIGHT. AND WHILE DRIVING. CITY STREET

- NHTSA Complaint No. 11406294, February 4, 2021 (2019 Atlas): THE REAR WINDOW ROLLS DOWN BY ITSELF WITH NOBODY TOUCHING ANY OF THE BUTTONS. THE LIGHT POPS UP ON THE DASH AND SAYS FAULTY ELECTRICAL. THE VEHICLE WILL SUDDENLY STOP IN THE MIDDLE OF DRIVING. THE EMERGENCY BREAK APPLIES. THE EMERGENCY BRAKE LIGHT COMES ON. CHECK ENGINE LIGHT ILLUMINATES. UNABLE TO SAFELY DRIVE AS THE VEHICLE JUST STOPS WITHOUT WARNING. VEHICLE IN MOTION ON THE STREET AND ON THE HIGHWAY OCCURRED SEVERAL TIMES

32.    Since then, countless Vehicle owners have explained online that they

had taken their Vehicles to their dealers in response to the wiring harness problems:

- NHTSA Complaint No. 11451669, February 12, 2022 (2019 Atlas): On Jan. 12th 2022 my wife and I were riding in our 2019 Volks Wagon Atlas in route to a doctors appointment and was slowing for a red light when a warning sounded the drivers side back door window lowered, multiple warning light came on and the most dangerous part was the electric e brake activated causing the vehicle to come to an immediate stop. We were lucky there wasn't any traffic behind us. The vehicle was taken to the Volks Wagon of Reading Pennsylvania, and the service tech

stated the vehicle was not safe to drive, and that that they have multiple vehicles with the same problem. We were further informed that the drivers door wiring harness failed and the part is backed ordered. I have been to the volks wagon atlas message board and found this problem is through out the United States if not world wide. Most of the complaints are how scared everyone was when the car stopped in traffic without warning. Volks Wagon is aware of this problem but have not taken the initiative to inform Atlas owners that this problem exist.

33.     The complete warranty repair data regarding the wiring harness repeated failures also put Defendant on notice of the defect.

### 3. Complaints Made Directly to Defendant

34.     Defendant also knew or should have known of the wiring harness defect based on the numerous complaints it received directly from customers.  The large number of complaints, and the consistency of their descriptions of the system failures, alerted Defendant of the defect.

35.     Only Defendant has access to the full universe of complaints it received regarding the wiring harnesses.  However, upon information and belief, many Vehicle owners who experienced the defect present in the wiring harnesses complained to Defendant.  Customer complaints posted online reflect that Defendant received many such customer complaints directly from Vehicle owners:

- NHTSA Complaint No. 11448507, January 23, 2022 (2021 Atlas): "On January 8, 2022 I was driving on a main road about 30 to 35 mph when the vehicle suddenly shook violently and the engine shut off. There was loud beeping and the computer system lit up saying Error: Engine at the same time the emergency brake was activated. There was also a message about a Door Error.

Luckily there were no cars around me at the time. I put the car in park and started it again. I was fairly close to home but this happened 3 more times, one time when I was pulling out on a road and traffic was coming toward me. I finally got the car home and since it was the weekend parked it. Monday morning **I contacted VW Road Assistance and they towed it to the dealership for repairs. This is a very serious and dangerous problem with the 2021 VW Atlas. If you were traveling on a major highway going 70 mph and your engine just shut down you could be seriously injured or killed**. Please look into this serious defect in the 2021 VW Atlas."

- NHTSA Complaint No. 11452328, February 16, 2022 (2021 Atlas): "At random times during driving the fault electronic parking brake with turn on and abruptly stop the vehicle making it jerk forward. It will trigger the windows to roll down, and errors will pop up stating lane assist is unavailable with beeping noise. **This puts my family at risk because I was completely scared when the parking brake automatically came on while exiting the highway and an 18-wheeler truck was behind me with my daughter in the car. I had to completely turn my vehicle off and back on to keep going**. When I took my car in on February 1,2022 the Service Manager said that there were multiple vehicles in their possession with the issue. He said it would take a month to get it fixed. **After speaker to a regional supervisor for Volkswagen they did not have a ETA for getting the parts needed to perform the repair, yet I am still paying a mthly payment and insurance on a vehicle I own that's not in my possession**. I have screenshots from my CarNet app with the warning issues that I shared with the manufacturer. There seems to be no sense of urgency to get this repaired or provide a vehicle that is comparable to fit my family size while waiting on the parts for repair."

36. As the above excerpts demonstrate, Vehicle owners have complained to Defendant on regarding repeated system failures, and the large number of complaints should have alerted Defendant to the defect.

14

### 4.     Complaints Collected by NHTSA

37.     Vehicle manufacturers are required by federal law to maintain close contact with the NHTSA regarding potential safety defects.  By law, manufacturers are required to report information regarding customer complaints and warranty claims to the NHTSA, and federal law imposes criminal penalties against manufacturers who fail to disclose known safety defects.  *See generally* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000)

38.     Automakers have an affirmative legal duty to disclose emerging safety-related defects to the NHTSA under the Early Warning Report requirements.

39.     Vehicle manufacturers should and do monitor NHTSA databases for consumer complaints as part of their ongoing obligation to uncover and report potential safety-related defects.  Defects that undermine the effectiveness of their Vehicles' safety systems are such safety-related defects. Accordingly, Defendant knew or should have known of the many complaints about wiring harness failures.

40.     A sampling of the complaints posted on the NHTSA database include the following:

- NHTSA Complaint No. 11386994, January 7, 2021 (2019 Atlas): THE REAR WINDOW ROLLS DOWN BY ITSELF WITH NOBODY TOUCHING ANY OF THE BUTTONS. THE LIGHT POPS UP ON THE DASH AND SAYS FAULTY ELECTRICAL. THE VEHICLE WAS IN MOTION, IN THE CITY. THE VEHICLE WILL SUDDENLY ATTEMPT TO STOP IN THE MIDDLE OF A DRIVE/MIDDLE OF THE ROAD. ALMOST AS IF THE EMERGENCY BREAK HAS

BEEN PULLED, ONLY NOBODY HAS TOUCHED IT. THE EMERGENCY BRAKE LIGHT DOES COME ON. AGAIN, IN MOTION, ON THE HIGHWAY (HAS HAPPENED A FEW TIMES). NOW, THE REMOTE START DOES NOT WORK."

- NHTSA Complaint No. 11449235, January 28, 2021: "The below are known issues dating back to at least 2020 Atlas models, but this first appeared in our vehicle mid- November 2021; we purchased the car new June 2021. The driver door contact switch has failed. There are annoyances - the widows randomly roll down, lots of dinging, warning lights, etc. - **but the safety issue is that the emergency brake will come on sometimes when you brake. We have a child and cannot risk suddenly being stopped on a highway. Because of this, the car is undriveable. VW estimates the part will be available in 2023, so there are people driving around with this safety issue because they have no second car and people who are paying a loan on a car they cannot drive**. These issues have been replicated by the dealer. The case has been escalated to VW and there is no sense of urgency. See here for reports of others with the same experiences: https://www.vwatlasforum.com/threads/error-driver-door-contact-switch.6359/"

- NHTSA Complaint No. 11443499, December 12, 2021 (2021 Atlas): "Within seconds of starting the vehicle, error codes started appearing on the dashboard and beeping noise stating to park the car and not drive. The back window will roll down on its on and the parking break will engage if it wasn't engaged already. I would turn off the car and it would go away But after a few minutes the car would start beeping and all kinds of lights and error code started appearing again. After getting this error message and the constant beeping, the emergency brake turns on and the window from behind driver's door lowers like 5 inches from top. At this point, I cannot lower window and I cannot turn off emergency brake. The code started appearing about a week prior to December 8 which was the final straw. It got to a point that while driving, if I took the foot of the gas pedal, the emergency break will engage automatically as I was going 10-15 miles per hr. **Everytime I slowed down and was coming to a**

**stop the car will engage the emergency break.** I had to turn off the car and back on in order to keep going. This almost caused me to be hit multiple times until I was able to get to a safe location and away from the main road. I've read many others complaint similar and I think this should be a recall. It is a safety hazard when the emergency break engages once you slow down and foot is off the break. This particular car was fixed on Nov.5 for a recall related to coupling rods. I was told that the issue now is called a 'driver front door harness' fault which the wires think I'm opening the door while driving so it engages the emergency break. Vehicle is currently at dealership and has been since Dec. 8 with no estimated time of repair due to waiting on parts.vehicle has been in my possession since Jan. 9, 2021

- NHTSA Complaint No. 11452328, February 16, 2022 (2021 Atlas): "At random times during driving the fault electronic parking brake with turn on and abruptly stop the vehicle making it jerk forward. It will trigger the windows to roll down, and errors will pop up stating lane assist is unavailable with beeping noise. **This puts my family at risk because I was completely scared when the parking brake automatically came on while exiting the highway and an 18-wheeler truck was behind me with my daughter in the car. I had to completely turn my vehicle off and back on to keep going**. When I took my car in on February 1,2022 the Service Manager said that there were multiple vehicles in their possession with the issue. He said it would take a month to get it fixed. After speaker to a regional supervisor for Volkswagen they did not have a ETA for getting the parts needed to perform the repair, yet I am still paying a mthly payment and insurance on a vehicle I own that's not in my possession. I have screenshots from my CarNet app with the warning issues that I shared with the manufacturer. There seems to be no sense of urgency to get this repaired or provide a vehicle that is comparable to fit my family size while waiting on the parts for repair."

- NHTSA Complaint No. 11455355, March 5, 2022 (2019 Atlas): "In Jan 2022, the air bag system error light lit up at start-up and remained lit. A first-available dealer appointment was made for 1/28, two weeks away. During those two weeks, the car started

to issue a burst of random alerts during cold startup - driver door contact switch failure, cruise control (ACC) failure, start/stop system failure, and the rear driver side window would roll down several inches. Shutting off and restarting the car solved these alerts. The car was inspected on Jan 28; the dealer confirmed a faulty wiring harness in the driver side door. They also confirmed the random alerts were the same cause. The dealer stated that the driver side air bag was nonfunctional, but the rest of the air bag system was OK. A replacement part was ordered with an estimated delivery of 2-3 weeks. As such, we chose to keep driving the car. Over the ensuing weeks, the random alert sequence got more frequent and started to show an electronic parking brake alert and engage the parking brake at startup. It then began happening on later starts when the car was fully warmed and would resume after the car was shut off and restarted. Finally, the alerts started to happen while moving, and instead of just a single burst, became a continuing sequence. The alerts are a rapid- fire volley of warning dings/dongs and accompanying messages in front of the driver. At the same time, the rear driver-side window is moving and the door contact switch is clicking randomly in the driver's left ear. It is a startling volley, which combined with the other weird sounds, is a disorienting and panic-inducing 360- degree assault on the senses. After no word from the dealer. I called on Mar 4 and was told the part was on a nationwide backorde, with no ETA. **I did some research and found numerous reports of the problem getting worse over time and the parking brake engaging while moving. As our experience matches the trend, I feel the car is no longer safe and have parked it until it is repaired."**

- NHTSA Complaint No. 11442273, December 1, 2021 (2021 Atlas): "Door Sensor causing car to throw various codes. Windows rolling down by themselves, parking brake engaging by itself. VW knows about the problem and should be a recall. **Parts is on back order with time frame."**

- NHTSA Complaint No. 11448453, January 22, 2022 (2020 Atlas): "In the beginning of Novemeber 2021 with 7680 miles an alarm stating Error: Driver door contact switch Fault: Electronic parking brake Attention: Engine is running. Error: Start Stop The

check engine light/EPC lights were on. Windows do not open or open about an inch by themselves. This issue occurs most times when starting the vehicle. VW was made aware and checked the vehicle stating the driver side door harness needs to be replaced but there is shipping delays. Over the next few months when operating the vehicle under speeds of approximatley 10 to 5 miles an hour the emergenancy parking break activates and slows or completley stops the vehicle while driving. This is a safety issue as a vehicle that suddenly stops while in traffic regardless of speed can be rear ended or cause an accident. VW has claimed that the door harness is at fault and that the parking break activating is because of a faulty door harness. **It has been over 2 months and the door harness has still not been replaced.** I have spoke to mechanics regarding this issue and they stated a parking break activating while the car is in motion is not related to a faulty door harness. I wish to have this complaint investigated and to have my car issue recalled so VW is forced to fix this issue. I have 3 small children who regularly ride in this vehicle. A emergency parking break activiating while the vehicle is in motion is unacceptable. Thank you."

- NHTSA Complaint No. 11448985, January 26, 2022: "After 3 months of owning this brand new car, the parking system started to act up. My parking sensors would beep for no reason, windows would roll down and my parking brake would come on when I was driving. I took the car to the dealership and they did an electrical update. Two months later the same issue happened again, as well as my engine light came on because my coolant was low. Again I took it to the dealership where I was told a door harness sensor needed to be replaced and my head gasket needed to be replaced as well. **My car has been in the shop for almost two months as the part is on back order.** Now there is also a recall for the air conditioner. This is the worst experience with a new car I have ever had. I have initiated the process of trying to get Volkswagen to buy it back. When I spoke to the service manager he told me he has 9 other Atlas's in the shop for the same reason. Customer care has been no help. I will never buy another Volkswagen again."

- NHTSA Complaint No. 11451440, February 10, 2022 (2021 Atlas): "I have a faulty Door harness that causes the vehicle to think they the door is open, when it is not. Because the car thinks the door is open, the E brake engages while driving and a loud beeping ensues. Several sensors also start flashing like check engine, start/stop system failure, check oil, etc. **the part is back ordered with no ETA** and VW don't do a recall because they don't want to be on the hook for all of these cars. A quick Google search will show you that this is a widespread safety issue that is being ignored"

- NHTSA Complaint No. 11452036, February 15, 2022 (2021 Atlas): Starting in November, a series of alarms would go off on the dashboard on the engine, lane assist, collision warnings, etc. As the problem progressed, the windows would go down automatically, and in the most severe instances, the car would engage the emergency park brake while coming to a stop!!! This happened more and more frequently to the point the car became undrivable as you awaited the car engaging the emergency parking brake while coming to a stop!!!! **The car has been at the dealership since 11/22/21 as the door control wiring harness is on backorder**. Someone will get hurt if this goes unrepaired."

- NHTSA Complaint No. 11453528, February 22, 2022 (2021 Atlas): "The component that failed is the Driver Contact Door Switch and the electronic parking brake. My safety and my children's safety and the people behind me are put at risk of an accident if my parking break comes on while driving. **I took it to the dealer on December 27,2021 and they said that it is the driver door wiring harness it controls everything in the car. They said they would order a new harness but it is on back order. I called dealer on Monday Feb 21,2022 and they still don't have the part**, I explained to them that as I was driving the windows automatically rolled down and I got the message contact door switch and parking break faults. They told me to deactivate the start stop system. I explained to them that it was deactivated and I got an oh well. I am worried about driving the vehicle and also teaching my son how to drive on a learners permit which we have put on hold until the problem is solved."

- NHTSA Complaint No. 11453853, February 24, 2022 (2021 Atlas): "Due to a malfunctioning driver door wire harness, multiple errors occur, including a electric parking brake issue. This causes the vehicles parking brake to engage while in coming to a stop but still in motion. This does cause the vehicles abruptly come to a stop. Additionally the wire harness malfunction has caused an issue with the driver side door locking function and driver side windows. Often times the driver side door does not lock when in drive and in motion, as well as trying to lock using the key fob and in park. The driver side windows randomly lower 3-4 inches, when driving as well. I am especially concerned with the parking brake, there have been a few occasions where I have almost been hit from the rear due to the abrupt stop. **I have taken the car in to the dealership and have been told the part is not available and they have multiple vehicles waiting over two months for the part**.

- NHTSA Complaint No. 11454546, February 28, 2022 (2021 Atlas): "According to my local dealership, the microchip in the driver door is malfunctioning. My car incorrectly detects that the driver door is open and puts the parking brake on while the car is running or in drive. Alerts like, 'error: driver door contact switch' pop up. 'Cruise control not available' has also popped up.These alerts did not begin to pop up until the parking brake started being triggered on February 9th when the car was 4.5 months old with 5,000 miles. The driver side window as well as the window behind it will also roll down at times when this happens. To get my car to release the parking brake, I have to turn the car off and open and close the driver door. On average, I have to repeat this process 5 times before the car will detect that the door is closed and disengage the parking brake. My car has incorrectly alerted me that the driver door was open while I was driving down the highway. **According to the dealership, the part that needs to be fixed is on backorder nationwide and I won't be able to get my car fixed until July. They are also out of loaners because so many people are having this issue. My safety as well as the safety of others in cars around me is at risk as the car will put the parking brake on thinking that the driver side door is open**."

- NHTSA Complaint No. 11455931, March 9, 2022 (2019 Atlas): "Last Saturday, several warning lights appeared on the dashboard, including 'ACC Not Available', 'Error: Driver Door Contact Switch', and 'Fault: Electronic Parking Brake'. While in traffic I slowed to around 15 mph and the emergency brake activated, stopping the car abruptly. This same scenario of slowing and the emergency brake activating happened twice more while driving home. Vehicle was taken to the dealership who advised we were the 16th Atlas that has experienced these problems. **We were told it would be 3-4 months before the parts to fix the vehicle were available.**"

- NHTSA Complaint No. 11449356, January 29, 2022 (2019 Atlas): "My car had an airbag alert show up on Thursday, January 27th. It said Error: Airbag. I contacted the dealership was able to get my car into Glenwood Springs Volkswagen service center on Friday, January 28th. At 4:30 pm I was told there was an issue with the airbag system. According to the Volkswagen employee, this is a known issue and they are surprised Volkswagen has not opened a recall. The service report states: Connected scan tool and found fault B101715 crash sensor for side air bag, drivers side open circuit/short circuit to B+ (passive). They recommended to replace drivers door harness. I was informed the necessary replacement parts were back ordered and would not be replaced for at least 1 month. I believe the earliest date to expect the fix is March 5th. **The local service center has 2 loaner cars that are currently loaned out due to this issue. They cannot provide me a loaner car**. **I called VW care and they are unable to escalate this issue until Thursday, February 3rd. They informed me it was not an active recall and not part of my warranty for them to have to provide me a safe car to drive**."

- NHTSA Complaint No. 11449937, February 2, 2022 (2021 Atlas): "Driver door wiring harness is faulty and needs replaced. At random times during driving all alerts will go off in car triggering the windows to roll down, the parking brake to engage while the vehicle is moving, turning off adaptive cruise, lane keep assist and many other safety features while using them. I

fear for the safety of the passengers in my car and those around me as I am unable to know when the brake will engage. **The dealer has confirmed the need for replacement but does not have the parts to replace. They will not provide a loaner and have no estimate of when parts will be available for repair**. The issue is ongoing and random."

- NHTSA Complaint No. 11451379, February 10, 2022 (2021 Atlas): "Emergency Brake engages while driving. It has happened multiple times at speeds of 25-70mph. When this happened the warning lights and beeping would start, saying "Fault Electronic Brake", Error: Driver Door Contact Switch", "Warning, engine is running" windows in the back would also automatically start rolling down and up. It has nearly caused us to get into two high speed accidents with our children in the car with us. **Vehicle is currently at dealership along with others with the same problem, has been there for over 3 weeks as they attempt to get a harness in for it. They are telling people because they are out of loaners that they have to continue to drive the vehicle. THEY are not safe to be on the road at this point**."

- NHTSA Complaint No. 11452157, February 15, 2022 (2021 Atlas): "There were multiple incidents where the windows would roll down and the error came on state "Driver Side Contact Error", once where the driver side door would not open, I had to crawl out the passenger side, and multiple times when the parking brake would not disengage. All of these issues have been said to be the drivers side harness kit, no rhyme or reason and lights and errors would go off after each incident. The main safety concern caused be this is when i was driving down a hill coming to a red light, i was reducing speed but was not stopped and the parking brake engaged on its own. I came to a dead stop in the middle of the road, luckily no cars behind me and on a clear road, the dash lit up with multiple errors but all disappeared before i a could write them all down. The dealership where my car current is has stated there is a parts bulletin out on this part causing all these issues with the door harness kit, but no recall. **They also could not guarantee that my parking brake would not engage again while the car was in drive, but did not want**

**to offer me a rental car because Volkswagen doesn't consider it a 'Safety issue'**. I know there are 5 other vehicles at the dealership with the same issue as mine (as of January 10th). This is happening in brand new cars, my car is a 2021 and have not even owned it a year."

- NHTSA Complaint No. 11453080, February 20, 2022 (2021 Atlas): "The driver door contact switch and door harness is faulty, which triggers several errors while driving. The lane keep assist and departure warning does not work when this is happening. Additionally, when braking, the car has several alarms that chime repeatedly, including low coolant, driver door contact switch, electronic parking brake failure, hill start assist, and dynamic cornering lights. The car beeps nonstop while the brakes are applied and the car is at a complete stop. The parking brake also engages when the brakes are applied, making it very unsafe to drive. When I called the dealership to schedule an inspection, they reported that they don't need to inspect the car because they know exactly which part is causing the problem, and ordered me the part. **However the part is on back order, so I've had to drive the car in this condition, as they will not put me in a rental.** The dealership has Informed me there is nothing else they can do, and Volkswagen customer care will not respond to my requests to discuss."

41.     As the preceding complaints demonstrate, Vehicle owners have lodged many complaints with the NHTSA about repeated wiring harness failures which alerted or should have alerted Defendant to the defect.

### 5.     Customer Complaints on Internet Forums

42.     In addition to the complaints lodged directly with Defendant, Dealers, and the NHTSA, many Vehicle owners posted complaints regarding repeated wiring harness failures on public online internet forums, which Defendant — like most manufacturers — regularly monitors.  For instance, on August 2, 2020,

one Vehicle owner posted:

- Yesterday I was driving with my family in our 2019 Atlas SEL Premium R-Line when the emergency brake system engaged out of nowhere. I have been having issues for a while with the perimeter sensors alerting when there are no reason to but this is a first, an extremely dangerous first!! I was traveling straight approximately 30 mph with no other vehicles or obstacles around when an alarm sounded and the dash lit up red as the vehicle braked to a screeching halt which lasted a few seconds. I was shocked at what happened and if a vehicle was behind me we were sure to get hit. Additionally if we were on a highway or just traveling at a higher speed on a congested NYC roadway things would have been tragic. I am concerned with my wife driving this vehicle. As I mentioned earlier I have had issues with the perimeter sensors alerting for no reason in the past. In the winter the sensors freeze easily while driving and it causes alert and I have to shut off the lane stay alert. But these issues happen during normal conditions also. Now I am extremely concerned with this braking issue. Has anyone else experienced this and if so what can be done to correct this? Thanks in advance.

https://www.vwatlasforum.com/threads/sudden-emergency-braking-engaged-while-driving.6013/

43.     On March 15, 2021, another Class Vehicle owner wrote on a VW Atlas-enthusiast website, "I recently started receiving this error for no reason, just within 15 seconds within starting the vehicle while being parked at my driveway or even being stopped at a red light. After getting this error message and the constant beeping, the emergency brake turns on and the window from behind driver's door lowers like 5 inches from top. At this point, I cannot lower window and I cannot turn off emergency brake. So in order to reset, I have to turn off the engine then open behind driver door(where the window is lowered) and when closing it back I turn on

engine. This makes the error go away, everything goes back to normal. So ODD but so annoying too. This has happened 3 times in the last 2 weeks. Don't know what triggers this. Anyone with similar issue? https://www.vwatlasforum.com/threads/error-driver-door-contact-switch.6359/ (last visited March 15, 2022).

44.     In response, another Class Vehicle owner responded on March 30, 2021 that they were having the same issue, the defect "became more frequent until it was happening all the time," and their dealer advised the issue was a faulty wiring harness, and that as of March 2021 their dealer already had " several other vehicles currently waiting for a replacement part and have repaired several others with the same problem": "I am having the exact same problem with my 2020 Atlas SE that has only 5k on the odometer. You are not alone with this issue as the service department at my dealership informs me that they have several other vehicles currently waiting for a replacement part and have repaired several others with the same problem. They inform me that the cause is a faulty wiring harness from engine compartment to the driver's door. Unfortunately, I fear that your issue will get worse before it gets better. Mine started out as an intermittent problem then became more frequent until it was happening all the time. I took a video of the alerts popping up on the dash to show the service department. My Atlas has now been at the dealership since Feb 23rd with no end in sight due to a nationwide lack of the specific part. I

spoke with the service manager and she suggested I call VW Customer Care to try to light a fire into the situation. They are assigning me an advocate. I have been given a new Tiguan to drive but that is not the car that I leased and am currently paying for. I am hoping that VW will make this right and if I don't have my car back repaired in the near future, that they swap out my leased Atlas for a new one. I am also going to make an official report complaint on the NHTSA website." *Id.*

45.     Over the following year, Class Vehicles owners published more than 120 additional posts stating that they too were experiencing the wiring harness defect and were not provided with replacement parts. In addition to those vehicle owners who never received a replacement wiring harness, one owner complained on March 3, 2022 that their vehicle continues to suffer from the defect post-repair: "My 2019 Atlas has been in 4 times to replace this same issue. Literally one year ago (feb 2021) They replaced my drivers side wiring harness and had my car for 30 days just to get a part! Everything was great during that year period, but now i'm getting the same exact error. I'm beyond annoyed at this point and i'm very worried about the safety of me and my kids. I may be moving away from VW after this issue." https://www.vwatlasforum.com/threads/error-driver-door-contact-switch.6359/page-6 (last visited March 15, 2022).

**6.     Acknowledgement of the Problem by VW Representatives, Dealers, and Technicians**

46.     Defendant's knowledge of the defect is also shown the fact that

Defendant's representatives, dealers, and technicians have admitted to Vehicle owners that repeated wiring harness failure is a well-known and pervasive problem with the Vehicles. The following is a representative sample of customer complaints reflecting Defendant's knowledge of the defect:

- NHTSA Complaint No. 11451669, February 12, 2022 (2019 Atlas): "On Jan. 12th 2022 my wife and I were riding in our 2019 Volks Wagon Atlas in route to a doctors appointment and was slowing for a red light when a warning sounded the drivers side back door window lowered, multiple warning light came on and the most dangerous part was the electric e brake activated causing the vehicle to come to an immediate stop. We were lucky there wasn't any traffic behind us. **The vehicle was taken to the Volks Wagon of Reading Pennsylvania, and the service tech stated the vehicle was not safe to drive, and that that they have multiple vehicles with the same problem**. We were further informed that the drivers door wiring harness failed and the part is backed ordered. I have been to the volks wagon atlas message board and found this problem is through out the United States if not world wide. **Most of the complaints are how scared everyone was when the car stopped in traffic without warning**. Volks Wagon is aware of this problem but have not taken the initiative to inform Atlas owners that this problem exist."

- NHTSA Complaint No. 11445277, December 28, 2021 (2021 Atlas): "Check engine light came on, windows were going down 1/8 of the way on their own, parking brake goes on automatically while engine is on while driving and pressing on brake, cannot utilize any controls on driver door. **Dealer checked and it is the door harness that is on backorder. I was told 41 customers ahead of me waiting for same part in Northeast USA**. Car is not safe to drive due to parking brake automatically engaging. VW of America notified and my case was escalated and I have initiated the PA Lemon Law Arbitration process. Issues first appeared 11/8/21. I have been given a smaller loaner vehicle from dealer on 11/9/21 and am still using that."

- NHTSA Complaint No. 11447177, January 12, 2022 (2021 Atlas): "Purchased the car in April 2021. After 230 miles of driving remote start stopped working. VW service center diagnosed faulty soldering on fuel pump and replaced it. In December 2021 both passenger side windows started opening on their own while in park and driving. Shortly started getting error message from proximity sensors, adaptive cruise control and finally brakes with service engine message. Brought to VW service center and got diagnosed with faulty door harness. **Service technician informed me that they had 20+ cars with similar issue and shortage of parts**. Ultimately I was told vehicle is not safe to drive, due to car identifying door as open and shutting off engine mid-driving. Harness replaced, not the trunk is opening in park and windows are still opening by themselves. Sent the vehicle to service center by tow truck, applied for lemon law replacement and VW corporate. This should be heading to recall to prevent driving accidents. VW corporate is very hard to contact and follow-up is very poor. Other vehicle issues: Low coolant level, faulty door lock on passenger door."

47.    Additionally, the large number and consistency of Vehicle owner complaints describing the wiring harness defect as a safety risk demonstrates that the Vehicle owners consider the defect to be material to a reasonable consumer.

48.    Defendant's New Vehicle Limited Warranty requires it to "repair to correct a defect in manufacturer's material or workmanship (i.e., mechanical defects)...." But as countless consumers have reported, Defendant has been unable to repair these defects despite being given numerous opportunities.  In violation of this express warranty, and as evidenced by the many complaints and repeat wiring harness failures, Defendant merely replaces a defective part with

another defective part.

- NHTSA Complaint No. 11447177, January 12, 2022 (2021 Atlas): "Purchased the car in April 2021. After 230 miles of driving remote start stopped working. VW service center diagnosed faulty soldering on fuel pump and replaced it. In December 2021 both passenger side windows started opening on their own while in park and driving. Shortly started getting error message from proximity sensors, adaptive cruise control and finally brakes with service engine message. Brought to VW service center and got diagnosed with faulty door harness. Service technician informed me that they had 20+ cars with similar issue and shortage of parts. Ultimately I was told vehicle is not safe to drive, due to car identifying door as open and shutting off engine mid-driving. **Harness replaced, not the trunk is opening in park and windows are still opening by themselves.** Sent the vehicle to service center by tow truck, applied for lemon law replacement and VW corporate. This should be heading to recall to prevent driving accidents. VW corporate is very hard to contact and follow-up is very poor. Other vehicle issues: Low coolant level, faulty door lock on passenger door."

- NHTSA Complaint No. 11455103, March 3, 2022 (2019 Atlas): "When the car is turned on the Adaptive cruise control is not available, the error code fault is 'driver door contact switch', fault code 'electronic parking brake' appears, the rear drivers side window rolls down about 6 inches, the car beeps and alerts 'the engine is running'. When at a complete stop, the beeping and alert with 'the engine is running' appears and the parking brake appears to turn back on as well. **My car had this issue in Feb 2021 and a part was replaced, but now the problem is back again**. This has been confirmed by the dealership and VW customer care that is a very known issue with Atlas. Unfortunately electronical issues are a huge concern because everything is connected. This is the primary car for me and my children. I have huge concerns of safety with my children riding in the car when it has such serious electrical issue."

- NHTSA Complaint No. 11455650, March 8, 2022 (2019 Atlas): "The driver door wiring harness started lowering windows randomly..**it was replaced 3/1/22 and now it is bringing up two info driver door contact switch and electronic parking brake..online it is saying this**

**is a safety issue."**

49.     Due to the permanent nature of the common defect in the defective Vehicles which cause them to fail, even after repeated "repairs," Plaintiff and the members of the Class have incurred and will continue to incur significant expenses. All defective Vehicles suffer from the same defect.

50.     Additionally, because the Vehicle systems may fail at any time, thereby startling the driver and putting the passengers' safety at risk, the defect makes these defective Vehicles unfit for the use for which they were intended in that they cannot be relied upon as a safe and reliable means of transport.

**C.  Defendant's Warranties and Response to the Defect**

51.     Defendant issued to all original purchasers and lessees, including Plaintiff and the other Class members, a written manufacturer's warranty. This New Vehicle Limited Warranty states that Defendant will "repair to correct a defect in manufacturer's material or workmanship (i.e., mechanical defects)...."

52.     However, Defendant knew, or at least should have known, of the defects at the time of sale or lease of the defective Vehicles.  Plaintiff and Class members, however, had no such knowledge.  The defects were and are latent in nature because they are not obvious or ascertainable upon reasonable examination.

53.     Despite having more than adequate opportunity to successfully remedy the defect(s) in the Vehicles, Defendant has failed to do so, and in many

instances has instead merely replaced defective components with defective components

54.     On November 12, 2021, VW issued a "Technical Tip" No. 97-21-02TT, entitled "Fault code U019900 or U020000 along with Various Warnings." The Technical Tip applies to 2019-2022 Atlas, Atlas Cross Sport, Golf, Golf Wagon, Jetta, Tiguan and Taos VW vehicles. It states "Various warning lights may illuminate, the windows may operate erratically, and several communication faults are stored," and explained that "A poor connection in/at the door wiring harness may cause fault code U019900 or U020000 to be stored along with many other faults. This may also cause unwanted activation of certain vehicle systems, such as the windows opening/closing by themselves."

55.     Technical Tip No. 97-21-02TT advises VW dealers to attempt a repair by checking certain wire harness connections and then ultimately replacing the defective wiring harness: "Check the wiring harness at the driver side A-pillar connection, both the door and body harness sides, for any pins that have poor terminal tension or pins that are backing out of their housing. While doing these checks, be sure to pay close attention to the Comfort CAN High and Low circuits. If there are any pin issues noted, replace the affected pins and retest. If there are not any pin fit issues, it is recommended to replace the affected door harness and retest."

56.     On January 14, 2022, VW issued a revised version of its Technical

Tip No. 97-21-02TT, which expanded the number of fault codes at issue with the Wiring Harness Defect. It applies to "Fault code U019900, U020000, B101729, B101715, B103611, B103629 along with Various Warnings."

57.      However, the proposed repair set forth in Technical Tip No. 97-21-02TT is inadequate because (1) VW does not have replacement wiring harnesses available and thus when Class Vehicle owners complain to VW and seek a repair they are told they need to wait months or longer for a replacement part; (2) Class Vehicle owners are often denied loaner vehicles or are provided inadequate loaner vehicles; and (3) those Class Vehicles owners who eventually were given a replacement wiring harness report that the repair attempt does not fix the problem.

58.      On March 11, 2022, Defendant finally formally notified the NHTSA that is will be issuing a safety recall on the Vehicles, affecting approximately 222,892 Vehicles.[1]  The recall report attributes the defect to "micromovement" of the wiring harnesses, which can damage the wire terminal surfaces, and cause airbags to deploy later than designed.[2]  "Other symptoms of a sporadic interruption of the affected electrical connection can be: inadvertent rolling down windows, inadvertent park brake engagement at low speeds (below approx. 3km/h or 1.8mph), warning regarding faulty door sensor."[3]

---

[1] *See* https://static.nhtsa.gov/odi/rcl/2022/RCAK-22V152-8339.pdf
[2] *See* https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V152-3153.pdf
[3] *Id.*

59.     Prior to the recall, Defendant concealed the fact that the Vehicles contain the defective wiring harnesses.  Defendant continues to conceal the fact that the replacement components it provides to purportedly repair the defect are equally defective.  Despite its knowledge of this defect, Defendant continues to sell defective Vehicles that contain the defective wiring harnesses. Therefore, Plaintiff did not discover and could not have discovered this defect through reasonable diligence.

## V.     CHOICE OF LAW ALLEGATIONS

60.     Because this Complaint is brought in New Jersey, New Jersey's choice of law regime governs the state law allegations in this Complaint.

61.     Because Defendant is a New Jersey corporation, New Jersey has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action than any other state.  Application of New Jersey law to Defendant and the claims of all Class members would not be arbitrary or unfair.

62.     Plaintiff pleads claims on behalf of a nationwide class because the laws for each state do not vary materially for these claims. Alternatively, Plaintiff pleads state law class claims as indicated below. This Complaint refers to the nationwide and state classes collectively as the "Class," unless noted otherwise.

## VI.    CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action on behalf of herself and all others similarly situated under Fed. R. Civ. P. 23.

64.     Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, the classes that Plaintiff seeks to represent shall be defined as follows:

> All persons and entities nationwide that purchased or leased a Vehicle (the "Nationwide Class")

> All persons and entities that purchased or leased a Vehicle in the State of Massachusetts (the "Massachusetts Class")

65.     Excluded from the Class are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

66.     Plaintiff seeks only damages and injunctive relief on behalf of herself and the Class members.  Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiff and/or the Class members.

67.     While the exact number of Class members is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendant and governmental officials.  Upon information and belief, Defendant has sold and leased over 222,000 defective Vehicles nationwide during the relevant time period, all of which have the defective wiring harnesses at issue.  Therefore, the Class members

35

are so numerous that individual joinder of all Class members is impracticable under

Fed. R. Civ. P. 23(a)(1).

68.     Common questions of law and fact exist as to all Class members.

These common legal and factual questions include:

(a)     whether each defective Vehicle was sold or leased with defective

wiring harnesses;

(b)     whether Defendant's express warranty covers the defect;

(c)     whether Defendant breached express warranties made to the

Class members;

(d)     whether Defendant breached implied warranties made to the

Class members;

(e)     whether Defendant replaced defective parts with defective parts;

(f)     whether Defendant knew about the defect and, if so, how long

Defendant has known about the defect;

(g)     whether Defendant concealed the defect;

(h)     whether Defendant's conduct violates consumer protection

statutes, warranty laws, and other laws asserted herein;

(i)     whether the Class members have suffered damages as a result of

the conduct alleged herein, and if so, the measure of such

damages, including diminution of value and deprivation of the

benefit of the bargain; and

(j)      whether the Class members are entitled to injunctive relief.

69.      Plaintiff's claims are typical of the claims of the Class members whom she seeks to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiff and each Class member have a defective Vehicle with the same defective wiring harnesses.

70.      Plaintiff will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4).  Plaintiff is an adequate representative because her interests do not conflict with the interests of the Class members.   Further, Plaintiff has retained counsel competent and experienced in complex class action litigation, including automotive defect class action litigation, and Plaintiff intends to prosecute this action vigorously.   Therefore, the interests of the Class members will be fairly and adequately protected.

71.      A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to any other available means for fairly and efficiently adjudicating the controversy.   In this regard, the Class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendant.   It is desirable to

concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits.   Individualized litigation presents a potential for inconsistent or contradictory results and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case.   By contrast, the class action procedure here will have no management difficulties.   Defendant's records and the records available publicly will easily identify the Class members. This defect is common to all defective Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiff's claims as well as the claims of the Class members.   Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court

72.      A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Defendant has acted or refused to act on grounds that apply generally to the Class members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class members.

## VII.   CLAIMS

### COUNT I
### BREACH OF EXPRESS WARRANTY—
### MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. §§ 2301, *ET SEQ.*)

73.      Plaintiff repeats and incorporates the allegations set forth above as if fully alleged herein.

74.     The defective Vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

75.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

76.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

77.     Defendant provided Plaintiff and Class members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

78.     15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiff properly invokes jurisdiction under the Class Action Fairness Act ("CAFA").

79.     In the course of selling the defective Vehicles, Defendant expressly warranted in its New Vehicle Limited Warranty that it will "repair to correct a defect in manufacturer's material or workmanship (i.e., mechanical defects)...."

80.     Upon information and belief, Defendant's standard warranty language is identical for all defective Vehicles sold nationwide.

81.     Defendant did not provide at the time of sale, and has not provided since then, Vehicles conforming to its express warranties.

82.     Defendant breached and continues to breach express warranties because the defective wiring harnesses were present in the defective Vehicles at the

time of sale.

83.     Defendant breached and continues to breach express warranties because Defendant did not (and does not) cover the full expenses associated with repairing and/or replacing the defective wiring systems in Plaintiff's and the Class members' defective Vehicles.

84.     Plaintiff has attempted to have their Vehicles repaired under the warranty.  Defendant breached and continues to breach express warranties because it merely replaces the defective components with additional defective components and is unable to successfully repair the defects in Plaintiff's and the Class members' defective Vehicles, despite having had reasonable opportunities to do so.  As such, the express warranties fail their essential purpose.

85.     Defendant's refusal to provide an adequate repair or replacement violates 15 U.S.C. § 2304.

86.     Despite the fact that the Vehicles' wiring harnesses continue to fail despite being "repaired," Defendant continues to replace the defective parts with identical or substantially similar defective parts.  Thus, the defect is permanent in nature.

87.     Defendant fraudulently concealed material information from Plaintiff and the Class regarding the existence and extent of the defects.  Defendant also fraudulently concealed the material fact that the replacement components were

defective.  Therefore, any limitations imposed by Defendant as to the scope of its obligations under the express warranties to repair and replace defective parts and/or any disclaimers in the written warranties prepared by Defendant that purport to preclude recovery by Plaintiff or the Class members are unconscionable, both substantively and procedurally, and are unenforceable as a matter of law.

88.     Any such limitations or exclusions have been imposed unilaterally by Defendant via adhesive, "take it or leave it" contracts with no ability by Plaintiff or the Class members to negotiate the substance or coverage of the warranties, and Plaintiff and the Class members did not have any meaningful choices of reasonably available alternative sources of supply of suitable Vehicles free of the above unconscionable conditions.

89.     Furthermore, Defendant's express warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Class members whole and because Defendant has failed and/or refused to adequately provide the promised remedies within a reasonable time.

90.     Also, as alleged herein, at the time that Defendant warranted and sold the Vehicles, it knew that the Vehicles were defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiff and the Class members were therefore induced to purchase the Vehicles under false and/or fraudulent pretenses.

41

91.     Further, the enforcement under these circumstances of any limitations whatsoever on the recovery of incidental and/or consequential damages is barred because any such limitations work to reallocate the risks between the parties in an unconscionable and objectively unreasonable manner, and result in overly harsh or one-sided results that shock the conscience, especially in light of the fact that Defendant simply placed defective components in the Vehicles when those Vehicles are brought in for repairs.

92.     Moreover, many of the damages flowing from the Vehicles cannot be resolved by the limited remedies contained in the express warranty as those incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein and due to their failure to provide such limited remedy within a reasonable time.  Therefore, any limitation on Plaintiff's and the Class members' remedies would cause the available remedy to be insufficient to make them whole.

93.     Defendant was previously provided notice of the defects in the Vehicles by numerous customer complaints, letters, emails, and other communications from Class members, dealers, and other repair facilities.

94.     Plaintiff and the Class members have suffered damages directly and proximately caused by Defendant's breach of the express warranty and are entitled to recover damages including, but not limited to, out of pocket expenses and

diminution of value.

## COUNT II
## BREACH OF IMPLIED WARRANTY—
## MAGNUSON-MOSS WARRANTY ACT
## (15 U.S.C. §§ 2301, *et seq.*)

95.    Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

96.    Plaintiff brings this claim on behalf of the Nationwide Class.

97.    The Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301.

98.    Plaintiff and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

99.    Defendant is a "supplier" of consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

100.    15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiff properly invokes jurisdiction under the Class Action Fairness Act ("CAFA").

101.    Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

43

102.    Defendant made written and implied warranties regarding the Vehicles to Plaintiff and Class members within the meaning of 15 U.S.C. § 2301. Defendant provided Plaintiff and other Class members an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

103.    Defendant breached the implied warranty of merchantability because the Vehicles were not fit for the ordinary purpose for which such goods are used. As described throughout the Complaint, the Vehicles contain defects which render them unsafe, inconvenient, and imperfect such that Plaintiff and Class members would not have purchased the Vehicles had they known of the defects.

104.    Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

105.    Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in value of their Vehicles, in an amount to be proven at trial.

106.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined

by the Court to have reasonably been incurred by Plaintiff and the other Class members in connection with the commencement and prosecution of this action.

107.    Further, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Defendant's violation of its written and/or implied warranties.

**COUNT III**
**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**
**(N.J.S.A. § 56:8-1, ET SEQ.)**

108.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

109.    This claim is brought by Plaintiff on behalf of the Nationwide Class.

110.    Plaintiff and Class members are "persons" under the New Jersey Consumer Fraud Act ("CFA").

111.    At all relevant times material hereto, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

112.    The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

113.    Defendant's practices violated the CFA for, inter alia, one or more of the following reasons:

(a)    Defendant concealed from Plaintiff and the Class the material

fact that the wiring harnesses in the Vehicles were defective;.

(b)     Defendant engaged in unconscionable commercial practices in failing to disclose material information discussed above about the Vehicles.

114.    Defendant consciously omitted to disclose material facts from Plaintiff and the Class with respect to the wiring harness defect.

115.    Defendant's unconscionable conduct described herein included the omission and concealment of material facts concerning the wiring harness defect.

116.    Defendant intended that Plaintiff and the Class rely on its acts of concealment and omissions and misrepresentations, so that Plaintiff and the Class would purchase and/or lease Vehicles.

117.    Had Defendant disclosed all material information regarding the wiring harness defect to Plaintiff and the Class, they would not have purchased and/or leased the Vehicles, or would have paid less.

118.    The foregoing acts, omissions and practices proximately caused Plaintiff and the Class to suffer an ascertainable loss in the form of, inter alia, diminution of value, and they are entitled to recover such damages together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

119.    In the course of its business, Defendant concealed the defects in the Vehicles as described herein and otherwise engaged in activities with a tendency or

capacity to deceive. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Vehicles.

120.    Defendant knew that the wiring harnesses in the Vehicles were defective, would fail without warning, and were not suitable for their intended use. Defendant was previously provided notice of the defects in the Vehicles by numerous customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities. Defendant nevertheless failed to warn Plaintiff and the other Class members about these defects despite having a duty to do so.

121.    By failing to disclose and by actively concealing the defects in Plaintiff's and the other Class members' Vehicles, which it marketed as safe, reliable, and of high quality, Defendant engaged in unfair and deceptive business practices in violation of the CFA.

122.    In the course of Defendant's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in Plaintiff's and the other Class members' Vehicles.

123.    Defendant's unfair or deceptive acts or practices were likely to and

did in fact deceive reasonable consumers, including Plaintiff and the Class members, about the true safety and reliability of their vehicles.

124.    Defendant intentionally and knowingly misrepresented material facts regarding the Vehicles with the intent to mislead Plaintiff and the Class members.

125.    Defendant knew or should have known that its conduct violated the CFA.

126.    As alleged above, Defendant made material statements about the safety and reliability of the Vehicles and the Volkswagen brand that were either false or misleading.

127.    Defendant owed Plaintiff a duty to disclose the true safety and reliability of the Vehicles, because Defendant:

(a)    Possessed exclusive knowledge about the defects in the Vehicles;

(b)    Intentionally concealed the foregoing from Plaintiff and the Class members; and/or

(c)    Made incomplete representations about the safety and reliability of the Vehicles.

128.    Because Defendant fraudulently concealed the defects in the Vehicles, Vehicle owners were deprived of the benefit of their bargain since the Vehicles they purchased were worth less than they would have been if they were

free from defects.  Had Vehicle owners been aware of the defects in their vehicles, they would have either not have bought their Vehicles or would have paid less for them.

129.    Vehicle owners were also harmed by Defendant's unfair and deceptive trade practices since their Vehicles were worth less as the result of Defendant's concealment of, and failure to remedy, the defects.  This diminished value is directly attributed to Defendant's dishonesty and omissions with respect to the quality and safety of the Vehicles.

130.    Defendant's concealment of the defects in the Vehicles was material to Plaintiff and the Class members.

131.    Plaintiff suffered ascertainable loss caused by Defendant's misrepresentations and its concealment of and failure to disclose the defects in their vehicles.

132.    As a direct and proximate result of Defendant's violations of the CFA, Plaintiff has suffered injury-in-fact and/or actual damage, as alleged above.

133.    Plaintiff seeks punitive damages against Defendant because Defendant's conduct was egregious and unconscionable.  Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.

134.    Because Defendant's unconscionable conduct caused injury to

Plaintiff and Class members, Plaintiff and the Class members seek recovery of actual damages including diminution of value, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

## COUNT IV
## BREACH OF EXPRESS WARRANTY
## (BASED ON NEW JERSEY LAW)

135.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

136.    Plaintiff brings this claim on behalf of the Nationwide Class.

137.    Plaintiff is and was at all relevant times a merchant with respect to motor vehicles.

138.    In its New Vehicle Limited Warranty, Defendant expressly warranted that it "repair to correct a defect in manufacturer's material or workmanship (i.e., mechanical defects)...."

139.    Defendant's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Vehicles.

140.    Defendant breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Defendant. Defendant has not repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

141.    Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

142.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

143.    Also, as alleged in more detail herein, at the time that Defendant warranted and sold the Vehicles it knew that the Vehicles did not conform to Defendant's Limited Warranty and were defective, and Defendant wrongfully and fraudulently concealed material facts regarding its Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

144.    Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on

Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

145.    Due to Defendant's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiff and to the other Class members of the purchase price of all Vehicles currently owned for such other incidental and consequential damages as allowed.

146.    Defendant was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

147.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (N.J. STAT. ANN. § 12-314)

148.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

149.    Plaintiff brings this claim on behalf of the Nationwide Class.

150.    Defendant was a merchant with respect to motor vehicles.

151.    A warranty that the Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff and Class members purchased or leased their Vehicles from Defendant.

152.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the defects in the Vehicles' wiring harnesses render them unsafe, inconvenient, and imperfect such that Plaintiff and the Class members would not have purchased or leased the Vehicles had they known of the defects.

153.    Defendant knew about the wiring harness defects at the time of purchase, allowing it to cure their its breach of warranty if it chose.

154.    Defendant was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

155.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## COUNT VI
## BREACH OF EXPRESS WARRANTY
## (MASS. GEN. LAWS CH. 106, § 2-313)

156.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

157.     Plaintiff brings this claim on behalf of the Massachusetts Class.

158.     Defendant is and was at all relevant times a "merchant" with respect to motor vehicles.

159.     In its Limited Warranty, Defendant expressly warranted that it will "repair to correct a defect in manufacturer's material or workmanship (i.e., mechanical defects)…."

160.     Defendant's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Massachusetts Class members purchased or leased their Vehicles equipped with wiring harnesses from Defendant.

161.     Defendant breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Defendant. Defendant has not repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

162.     Furthermore, the limited warranty of repair and/or replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Massachusetts Class members whole and

because Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

163.    Accordingly, recovery by Plaintiff and the other Massachusetts Class members is not limited to the limited warranty of repair or replacement of parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Massachusetts Class members, seeks all remedies as allowed by law.

164.    Also, as alleged in more detail herein, at the time that Defendant warranted and sold the Vehicles it knew that the Vehicles did not conform to Defendant's Limited Warranty and were defective, and Defendant wrongfully and fraudulently concealed material facts regarding its Vehicles.  Plaintiff and the other Massachusetts Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

165.    Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Massachusetts Class members' remedies would be insufficient to make Plaintiff and the other Massachusetts Class members whole.

166.    Due to Defendant's breach of warranty as set forth herein, Plaintiff

and the other Massachusetts Class members assert as an additional and/or alternative remedy, as set forth in Mass. Gen. Laws Ch. 106, § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Massachusetts Class members of the purchase price of all Vehicles currently owned for such other incidental and consequential damages as allowed under Mass. Gen. Laws Ch. 106, §§ 2-711 and 2-608.

167.    Defendant was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

168.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the other Massachusetts Class members have been damaged in an amount to be determined at trial.

## COUNT VII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MASS. GEN. LAWS CH. 106, § 2-314)

169.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

170.    Plaintiff brings this claim on behalf of the Massachusetts Class.

171.    Defendant is and was at all relevant times a merchant with respect to motor vehicles.

172.     A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

173.     These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the Vehicles are defective in that there are defects in the Vehicles' wiring harnesses rendering certain crucial safety and other functions inoperative.

174.     Defendant was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

175.     As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiff and the other Massachusetts Class members have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class members, respectfully request judgment against Defendant as follows:

(A)     certifying the proposed Nationwide Class and Massachusetts Class;

(B)     appointing Plaintiff and their counsel to represent the Classes;

(C)     ordering injunctive relief, restitution, disgorgement, and/or other

57

appropriate relief;

(D)   awarding compensatory, punitive, exemplary, and other recoverable damages;

(E)   awarding reasonable attorney's fees and expenses;

(F)   awarding pre-judgment and post-judgment interest; and

(G)   awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: March 25, 2022                    Respectfully submitted,

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN
BRODY & AGNELLO P.C.
5 Becker Farm Road
Roseland, New Jersey 07068-1739
Telephone: (973) 994-1700
Facsimile:  (973) 994-1744
JCecchi@carellabyrne.com


Steve W. Berman
Sean R. Matt
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

Jeffrey S. Goldenberg
Todd B. Naylor
Robert B. Sherwood
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio  45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com
rsherwood@gs-legal.com


Sean K. Collins
LAW OFFICES OF SEAN K.
COLLINS
184 High Street, Suite 503
Boston, MA 02110
Telephone: (855) 693-9256
Facsimile: (617) 227-2843
sean@neinsurancelaw.com

*Counsel for Plaintiff and the Proposed
Class*